[Civ. No. 1996. Third Appellate District.—April 24, 1919.]

J. N. LISENBEE, Respondent, v. MAUD IRENE LISENBEE et al., Appellants.

[1] COMMUNITY PROPERTY — PRESUMPTION — REBUTTAL EVIDENCE.—In this action to quiet title to certain real property claimed by one of the defendants to have been the community property of herself and plaintiff's predecessor, the presumption that the property was community in character, it having been acquired during coverture, was overcome by the positive testimony of plaintiff's predecessor that it was paid for out of money received for the sale of other land which he owned prior to his marriage to such defendant.

[2] APPEAL—FINDINGS—SUSPICIOUS CIRCUMSTANCES.—It is idle to ask an appellate court to set a finding aside because the circumstances may be somewhat suspicious and there may be some reason for believing that plaintiff's predecessor was trying to defraud his wife.

[3] DEEDS—PRESUMPTION OF DELIVERY.—Where a deed is read in evidence without objection, it carries with it the presumption of delivery at its date.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. F. Ramage for Appellants.

A. H. Carpenter for Respondent.

BURNETT, J.—The action was brought to quiet title to forty-three acres of land in San Joaquin County. Defendant, Maud Lisenbee, who was married to Charles S. Lisenbee in 1912 and was his second wife, was the only serious contestant of plaintiff's claim. Her opposition is based primarily upon the contention that the land was community property, and that the conveyance to plaintiff was made to defraud her of her community rights. Twenty acres of the land in controversy were conveyed to Charles Rothwell Lisenbee, a son of Charles S. Lisenbee by a former wife, by a deed from A. S. Gunn and wife, on August 23, 1913. The remaining twenty-three acres were conveyed by the said Charles S. Lisenbee and Maud Irene Lisenbee to said son on April 17, 1915, and he conveyed both parcels to plaintiff for a valuable consideration on the thirtieth day of January, 1917. On May 22, 1915, the said Maud Lisenbee brought an action against her husband for divorce on the ground of cruelty. She was denied a decree for the reason that her testimony was not sufficiently corroborated, but on May 19, 1916, she was awarded a certain amount for maintenance, and on November 12, 1917, an execution was issued thereon. This was levied upon the property and by virtue thereof it was sold to one Floyd Klinger to satisfy said judgment.

Among the court's findings were the following: "That the title of the twenty-acre tract described in the complaint herein never at any time vested in Charles Samuel Lisenbee or Maud I. Lisenbee, his wife, and that the purchase price therefor was paid by Rothwell Lisenbee, and the conveyance of said realty was made to him for that reason," and "that the twenty-three acre tract described in the complaint herein was purchased by Charles Samuel Lisenbee with the proceeds derived from the sale of 320 acres of land in Calaveras County that had been his separate and individual property that he owned for more than twenty years prior to his marriage with the defendant Maud Irene Lisenbee, and that for that reason he could convey the title thereto without his said wife, Maud, joining in the conveyance thereof, and that if any fraud or threats were made or practiced, as alleged in

the defendant Maud I. Lisenbee's cross-complaint, the evidence thereof was wholly immaterial, and such allegations require no findings thereon, as they could not affect the plaintiff's title to the realty in controversy.''

There is the additional finding: ''That the deed from Charles and Maud Irene Lisenbee to Rothwell Lisenbee, dated April 17, 1915, was not without consideration, and all the allegations of fraud in the defendant Maud Irene Lisenbee's cross-complaint herein are untrue.''

These conveyances to the son were prior to the beginning of said action for divorce, which culminated in the judgment for maintenance, and it is apparent that if said conveyances were and are valid, appellants are in no position to question the sufficiency of the conveyance to plaintiff.

As to the conveyance of the twenty-acre tract to the son, Charles S. Lisenbee testified: ''I went there one Sunday; there was a gentleman told me, Mr. Robert's neighbor, said Mr. Roberts wanted to sell the place; he says, 'You can't see him unless you come here Sunday,' and I came Sunday to see him and brung Rothwell, my son, Charles Rothwell, with me, and Mr. Klinger went with me and went there and looked at the place; Rothwell said he wanted the place, for me to buy it for him, he would pay me for the place. He had a check-book of three thousand dollars of his own and several hundred dollars besides, that he says I could use in buying it. 'Well,' I says, 'son, no use of that, your money is on interest,' and I used my money I had off my place up yonder to buy it with, gave Mr. Roberts a check first.'' He testified further that he was repaid a portion of it by his son. However, it is unimportant whether he was repaid the purchase price or not. He testified positively that he paid for the land out of money he received for the sale of other land which he owned prior to his marriage with appellant Maud. He therefore had the legal right to make a gift of it to his son or to convey it to him upon his promise to repay the purchase price. As to this transaction it may be stated there is no evidence whatever of fraud, nor does it appear that the conveyance to the son was in trust for any purpose. It may be added that appellants made no attempt to show that any of the money with which the land was purchased was community property.

[1] Indeed, appellants rely as to that upon the presumption that property acquired during coverture is community in character. This presumption, however, was overcome in the opinion of the trial judge, by the positive testimony of the witness, and we must follow his finding.

[2] The character of the other tract must be likewise considered. The said Charles S. Lisenbee testified positively that it was purchased with money obtained from the sale of land belonging to him before his second marriage. No attempt was made to disprove this. While he seems to have quibbled to a certain extent, was, apparently, an ignorant and somewhat stupid witness, yet his testimony, if believed, is amply sufficient to support the finding of the lower court. It was undoubtedly believed and acted upon, and it is idle to ask an appellate court to set the finding aside because the circumstances may be somewhat suspicious and there may be some reason for believing that he was trying to defraud his wife.

If we concede that the deed of April 17, 1915, executed after his wife had left him, was the result of an intention to place his property beyond her reach, and that it might have been set aside on the ground of fraud, it can be of no avail to appellants, since the deed was not attacked on any such ground, but solely for the reason that the signature of Maud I. Lisenbee was obtained by duress. But, as already shown, this circumstance was immaterial in view of the fact that, upon sufficient evidence, the court found that the land was separate property of the husband.

It follows from the foregoing that appellants' claim of the insufficiency of the evidence to show the delivery of the deed from Rothwell Lisenbee to plaintiff is of no decisive moment. They were not creditors of either party and it is really of no legal concern to them whether or not the title became vested in respondent. [3] But, it may be said, the deed to plaintiff was read in evidence without objection, and it carried with it the presumption of delivery at its date, irrespective of any testimony in regard thereto. (*McGorry* v. *Robinson,* 135 Cal. 314, [67 Pac. 279].)

Moreover, there was positive evidence that it was delivered to the attorney for plaintiff at the latter's request and by the former filed for record in the recorder's office.

As to the consideration for the deed, if any be sought, the testimony is uncontradicted that plaintiff gave his promissory note for seven thousand dollars for the land and thereafter leased it to said Rothwell Lisenbee.

Counsel for appellant Maud I. Lisenbee complains bitterly of the treatment accorded her by her husband, but whatever justification there may be, on moral grounds, for condemnation of his conduct, there seems to be no doubt, from the record before us, upon well-established principles, that the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.